**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|   |   |   |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 16-cv-738 (KBJ) |
| RYAN ZINKE, *in his official capacity as Secretary, U.S. Department of the Interior, et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

On April 20, 2010, the *Deepwater Horizon* oil rig exploded in the Gulf of Mexico, killing eleven workers, contaminating roughly 1,100 miles of shoreline, and causing significant losses to the environment and the economy throughout the region. (*See* Compl., ECF No. 1, ¶¶ 52–56.) *See generally In re Deepwater Horizon*, 753 F.3d 570 (5th Cir. 2014). President Obama immediately established an independent commission to analyze the disaster and to recommend changes to the federal government's regulatory regime for offshore drilling. (*See* Compl. ¶ 58.) In addition, the Council on Environmental Quality ("CEQ"), which is an entity within the Executive Office of the President, initiated a review of the procedures that the Department of the Interior uses for subjecting offshore oil and gas exploration and development projects to the requirements of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370h. (*See* Compl. ¶ 59.) *See also* CEQ, Review of MMS NEPA Policies, Practices, and Procedures for OCS Oil and Gas Exploration and Development, 75 Fed.

Reg. 29,996 (May 28, 2010). Both the independent commission and the CEQ recommended major revisions to Interior's NEPA procedures, including changes to certain regulatory provisions that permit the agency to bypass the project-specific environmental review that is typically required for all major federal actions—provisions that are known as "categorical exclusions." (Compl. ¶¶ 68–69 (describing the independent commission's report), 65 (describing the CEQ's report); *see also* Letter from Abigail Ross Hopper, Dir., Bureau of Ocean Energy Mgmt. & Brian Salerno, Dir., Bureau of Safety & Envtl. Enf't, to Miyoko Sakashita, Oceans Dir., Ctr. for Biological Diversity (June 23, 2016) ("Denial of Pet. for Rulemaking"), Ex. 1 to Def.'s Mot. to Dismiss, ECF. No. 11-2, at 5 (quoting from the CEQ's report).)[1] Interior took these calls for reform under advisement, and initiated a review of its own NEPA procedures that commenced on October 8, 2010. *See* Dep't of the Interior, Notice of Intent to Conduct a Review of Categorical Exclusions for Outer Continental Shelf Decisions ("Notice of Intent"), 75 Fed. Reg. 62,418, 62,418 (Oct. 8, 2010).

Interior's internal NEPA review is still ongoing to date—now more than six years later. (*See* Compl. ¶ 66.) Frustrated with the agency's failure to announce reforms and concerned about the alleged dire environmental consequences of Interior's existing NEPA procedures, Plaintiff Center for Biological Diversity ("CBD") filed this lawsuit seeking to compel Interior to complete its NEPA review and announce whether, in the agency's view, revisions to its NEPA policies are necessary. (*See id.* ¶ 10.) CBD maintains that Interior's failure to finish its review and reveal the results constitutes "agency action . . . 'unreasonably delayed'" within the meaning of the scope-of-review

---

[1] Page-number citations to the documents the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

provision of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. (Compl. ¶ 77 (quoting 5 U.S.C. § 706(1)).) And to bolster the claim that Interior has a legal duty to take the actions CBD seeks to compel, CBD invokes a CEQ regulation that states: "Agencies shall continue to review their policies and procedures and in consultation with the [CEQ] to revise them as necessary to ensure full compliance with the purposes and provisions of [NEPA]." 40 C.F.R. § 1507.3(a). (*See* Compl. ¶ 77.)

Before this Court at present is Interior's ripe motion to dismiss CBD's complaint. (*See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Mot."), ECF No. 11-1; *see also* Pl.'s Resp. & Opp'n to Def.'s Mot. to Dismiss ("Opp'n"), ECF No. 13; Def.'s Reply Mem. in Supp. of Mot. to Dismiss ("Reply"), ECF No. 14.) On March 31, 2017, this Court issued an order that **GRANTED** Interior's motion to dismiss, and **DISMISSED** CBD's lawsuit. (*See* ECF No. 17.) This Memorandum Opinion explains the reasons for that order. In short, the Court has concluded that, although the text of 40 C.F.R. § 1507.3(a) plainly establishes that an agency has an ongoing obligation to review its own NEPA procedures and to make changes "as necessary," that regulation does not mandate that an agency *complete* its ongoing review—*i.e.*, make a final decision regarding whether or not revisions are warranted—much less demand that an agency publicly announce its decision to decline to revise its existing rules. What is more, it is clear to this Court that the agency-review obligation that section 1507.3(a) establishes does not qualify as the type of "discrete" agency action that a federal court can supervise consistent with the circumscribed judicial role that the APA contemplates. *See Norton v. S. Utah Wilderness All.* (*SUWA*), 542 U.S. 55, 62–64, 66–

67 (2004). Consequently, this Court agrees with Interior that CBD's complaint must be dismissed because it fails to state a claim upon which relief can be granted.

## I.     BACKGROUND

### A.     Environmental Review Of Major Federal Actions Under NEPA

NEPA's core provision is the requirement that, whenever any federal agency proposes a "major Federal action[] significantly affecting the quality of the human environment," the agency must prepare a comprehensive document that essentially details and evaluates "the environmental impact of the proposed action" and assesses other alternatives. 42 U.S.C. § 4332(2)(C). This provision—often called the "environmental impact statement" or "EIS" requirement—is "[a]t the heart of NEPA." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 757 (2004).

To implement the EIS mandate, NEPA requires agencies to consult with the CEQ (a body that Congress created in the NEPA statute itself, *see* 42 U.S.C. § 4342) to identify procedures that ensure that environmental values are considered in agency decision making. *Id.* § 4332(2)(B). The CEQ has the "authority to issue regulations interpreting [NEPA]," *Pub. Citizen*, 541 U.S. at 757, and the CEQ's regulations apply to all federal agencies. 40 C.F.R. § 1507.1.[2]

---

[2] The CEQ's regulations state that all federal agencies "shall comply with" those regulations, 40 C.F.R. § 1507.1, and courts frequently treat those regulations as binding on other federal agencies. *See Brodsky v. U.S. Nuclear Regulatory Comm'n*, 704 F.3d 113, 120 n.3 (2d Cir. 2013) (collecting cases). But NEPA itself does not expressly require that other agencies comply with the CEQ's regulations; therefore, "the binding effect of CEQ regulations is far from clear." *TOMAC, Taxpayers of Mich. Against Casinos v. Norton*, 433 F.3d 852, 861 (D.C. Cir. 2006). Nevertheless, neither party raises this point in the instant case, and therefore the Court will treat CEQ's regulations as having the force of law. *See City of Alexandria v. Slater*, 198 F.3d 862, 866 n.3 (D.C. Cir. 1999) ("Because the Administration does not challenge the Council's regulatory authority, we treat the Council's regulations as binding on the agency."); *see also SUWA*, 542 U.S. at 65 (explaining that courts can enforce compliance with "agency regulations that have the force of law").

Notably, the CEQ's regulations offer agencies the option of preparing a less-burdensome "environmental assessment" in lieu of an EIS under certain circumstances, *see* 40 C.F.R. § 1508.9; *see also* 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1501.4(c), (e), and the regulations also provide agencies with a way to avoid undertaking any environmental analysis at all with respect to certain proposed actions under consideration. To bypass the environmental review entirely, an agency must identify "categorical exclusions" from the EIS requirement; these must be types of agency actions "which do not individually or cumulatively have a significant effect on the human environment." 40 C.F.R. § 1508.4 (describing categorical exclusions); *see also id.* § 1507.3(b)(2)(ii) (instructing each agency to identify categorical exclusions). For example, Interior has promulgated categorical exclusions for "[p]ersonnel actions and investigations and personnel services contracts[,]" as well as for "[i]nternal organizational changes and facility and bureau reductions and closings." 43 C.F.R. § 46.210(a), (b). The CEQ's regulations make clear that if a proposed action falls within one of an agency's established categorical exclusions, "neither an environmental assessment nor an environmental impact statement is required[,]" except in "extraordinary circumstances[.]" 40 C.F.R. § 1508.4.

A CEQ regulation requires each agency to develop its own "implementing procedures" to "supplement" the CEQ's rules, *id.* § 1507.3(a), and also provides that each agency's procedures must identify categorical exclusions, *see id.* § 1507.3(b)(2)(ii). Interior's NEPA procedures are codified across both the Code of Federal Regulations and Interior's Department Manual, *see* 43 C.F.R. part 46; Dep't of the Interior, Dep't Manual, Part 516 (May 27, 2004); *see also Mich. Gambling*

*Opposition v. Kempthorne*, 525 F.3d 23, 28 (D.C. Cir. 2008), and both of these sources contain lists of agency actions that are categorically excluded from NEPA's EIS requirement. *See* 43 C.F.R. § 46.210; Dep't Manual, Part 516, Ch. 15.4.[3] Significantly for present purposes, the same CEQ regulation states that an agency must "continue to review" its own policies and procedures, presumably including its designated categorical exclusions, and "revise them as necessary[.]" 40 C.F.R. § 1507.3(a) ("Agencies shall continue to review their policies and procedures and in consultation with [CEQ] to revise them as necessary to ensure full compliance with the purposes and provisions of [NEPA].").

## B. Interior's NEPA Procedures For Offshore Drilling Projects

Interior's Department Manual contains several categorical exclusions that specifically pertain to the authority that Interior has under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331–1356b, "to grant and manage leases for recovery of oil, gas, and other minerals from submerged lands located on the Outer Continental Shelf." *Mesa Operating Ltd. P'ship v. U.S. Dep't of Interior*, 931 F.2d 318, 319 (5th Cir. 1991). OSCLA's mandate that Interior manage mineral leases in the Outer Continental Shelf encompasses four distinct stages of regulatory responsibility: "(1) formulation of a five year leasing plan by the Department of the Interior; (2) lease sales; (3) exploration by the lessees; [and] (4) development and production." *Sec'y of the Interior v. California*, 464 U.S. 312, 337 (1984). "Each stage involves separate regulatory review[,]" *id.*, and it is well established that NEPA's requirements apply of

---

[3] The categorical exclusions listed in Chapter 15 of the Department Manual, which were most recently updated in 2004, are particular to the Minerals Management Service, a former agency within Interior that was reorganized after the 2010 Deepwater Horizon oil spill. *See* Dep't of the Interior, Reorganization of Title 30, Code of Federal Regulations, 75 Fed. Reg. 61,051, 61,052 (Oct. 4, 2010).

their own force to each stage of the OCSLA regulatory process, *Vill. of False Pass v. Clark*, 733 F.2d 605, 609 (9th Cir. 1984); *see, e.g.*, *Oceana v. Bureau of Ocean Energy Mgmt.*, 37 F. Supp. 3d 147, 154–74 (D.D.C. 2014) (evaluating whether OCSLA lease sales complied with NEPA).

As relevant here, Interior has determined that, with certain exceptions, no EIS need be created before the agency undertakes two different types of OSCLA approvals: (1) "[a]pproval of an offshore lease or unit exploration, development/production plan . . . in the central or western Gulf of Mexico[,]" or (2) "[a]pproval of an Application for Permit to Drill . . . an offshore oil and gas exploration or development well[.]" Dep't Manual, Part 516, Ch. 15.4(C)(10), (12). These categorical exclusions are of particular interest to CBD's staff and its members, several of whom live near and enjoy the Gulf of Mexico (*see* Compl. ¶¶ 15–16), because Interior invoked these categorical exclusions when it approved British Petroleum's "initial and revised exploration plan, as well as its permit to drill the Macondo well" in the Gulf of Mexico (*id.* ¶ 57), and as a result of several failures in the machinery attached to the Macondo well, it "blew out and caused the *Deepwater Horizon* oil rig to explode" (*id.* ¶ 52). *See In re Deepwater Horizon*, 753 F.3d at 571.

## C. Interior's Review Of Its NEPA Procedures After The Deepwater Horizon Oil Spill

The *Deepwater Horizon* oil spill spurred a series of efforts to review and reform the federal government's regulatory regime for offshore drilling projects, as explained above. (*See* Compl. ¶¶ 58–59.) Both the CEQ and the commission that President Obama convened issued reports, and both reports recommended, in particular, that Interior revise its categorical exclusions related to offshore drilling. (*Id.* ¶¶ 65, 68–69.)

Adding its voice to the chorus, Plaintiff CBD specifically petitioned Interior in June of 2010, requesting that the agency initiate a rulemaking for the purpose of eliminating the categorical exclusions that permit the agency to approve leases for outer continental shelf drilling without an environmental review. (Compl. ¶ 61; *see also* Denial of Pet. for Rulemaking at 2–3.)

On October 8, 2010, Interior published a notice of its "intent to conduct a broad review of its categorical exclusions . . . for Outer Continental Shelf (OCS) decisions." Notice of Intent, 75 Fed. Reg. at 62,418. The notice invited public comments and set a comment deadline one month later. *Id.* at 62,419. More than six years later, Interior's review is still ongoing. (Compl. ¶ 66; Denial of Pet. for Rulemaking at 5.) Moreover, Interior has continued to approve permits in the Gulf of Mexico at every stage of the OCSLA review process—including drill permits—pursuant to its categorical exclusions from the EIS requirement. (Compl. ¶ 72.)

### D. Procedural History

CBD filed this lawsuit on April 20, 2016, seeking to compel Interior to respond to CBD's petition for rulemaking and complete the agency's ongoing review of its categorical exclusions under NEPA. (*See* Compl.) CBD's two-count complaint charges Interior with unreasonably delaying its response to CBD's rulemaking petition in violation of the APA (*see id.* ¶ 75), and with failing to complete a legally required review of its categorical exclusions, in violation of "the APA and/or NEPA" (*id.* ¶ 77 (citing 40 C.F.R. § 1507.3)). CBD's complaint seeks an order declaring that both failures constitute "agency action unlawfully withheld or unreasonably delayed" within the meaning of 5 U.S.C. § 706(1), and it asks this Court to compel Interior (1) to act on

CBD's rulemaking petition within 30 days, (2) to complete the agency's review of its NEPA procedures within 90 days, and (3) to "issue the necessary revisions" of its NEPA procedures within 120 days. (*Id.*, Prayer for Relief ¶¶ 1–4.)

Interior has moved to dismiss the case. In its motion, Interior first notes that it denied CBD's petition for rulemaking shortly before its motion was filed (Mot. at 15–17 (citing Denial of Pet. for Rulemaking)), and as a result, Interior argues (and CBD concedes) that the complaint's first claim is moot (*id.* at 18–23).[4] Second, with respect to CBD's claim that Interior has unlawfully failed to complete its review of its NEPA procedures, Interior argues that CBD fails to state a claim for relief because CBD has not identified a mandatory duty to take discrete action so as to substantiate a claim for agency action "unreasonably delayed" under 5 U.S.C. § 706(1). (Mot. at 23–26 (invoking Federal Rule of Civil Procedure 12(b)(6)).) This Court held a hearing regarding Interior's motion on February 2, 2017, and it issued an Order dismissing CBD's action on March 31, 2017, which was based on the following analysis of the standards, claims, and issues in this case.

## II. LEGAL STANDARDS

### A. APA Claims Brought Under 5 U.S.C. § 706(1)

In its "scope of review" provision, the APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1). Unlike the provision that instructs courts to "set aside" unlawful agency action, *id.* § 706(2), the § 706(1) provision "provides relief for a *failure* to act[.]" *SUWA*, 542 U.S. at 62

---

[4] CBD acknowledges that Interior's response to its rulemaking petition mooted its claim regarding Interior's failure to respond. (*See* Opp'n at 14.) *See also Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*, 794 F. Supp. 39, 44–46 (D.D.C. 2011) (holding that denial of petition for rulemaking, is issued after lawsuit was filed, mooted claim that agency had failed to respond to the petition).

(emphasis added). Notably, however, only certain *types* of agency failures can support a claim under § 706(1). It is well established that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64 (emphasis in original). These two limitations play different roles: "The limitation to *discrete* agency action precludes . . . broad programmatic attack[s,]" *id.* (emphasis added), while "[t]he limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law[,]" *id.* at 65 (emphasis in original).

The discreteness limitation precludes using "broad statutory mandates" to attack agency policy, the better to "avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Id.* at 64, 66. A statutory provision "contain[ing] only a general follow-the-law directive . . . flunks *SUWA*'s discreteness test[,]" for example, because it does not prescribe a specific action that a court can competently compel and supervise. *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 891 (D.C. Cir. 2014); *see also Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016) (explaining that "§ 706(1) grants judicial review only if a federal agency has a 'ministerial or non-discretionary' duty amounting to 'a specific, unequivocal command'" (quoting *SUWA*, 542 U.S. at 63–64)).

The discreteness requirement promotes a core goal of the APA because it permits lawsuits targeting agency *in*action to the same degree that suits challenging reviewable "agency action" under § 706(2) (or "final agency action" under 5 U.S.C. § 704) are permitted. *See Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) ("Where a

federal court has jurisdiction to hear challenges to an agency action[,] it also has jurisdiction over claims of unreasonable delay."). This parallel between reviewable action and reviewable inaction rightly avoids a scenario in which "agencies could effectively prevent judicial review of their policy determinations by simply refusing to take final action." *Id.*; *cf. In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (explaining that "the primary purpose of the writ [of mandamus] in circumstances" in which a plaintiff files a § 706(1) claim directly in the D.C. Circuit "is to ensure than an agency does not thwart [the Circuit's] jurisdiction by withholding a reviewable decision"). However, it also means that if the challenged agency inaction relates to discretionary agency policymaking that would not be reviewable in any event, there is no valid basis for maintaining a claim for inaction under § 706(1).

The other § 706(1) requirement—that the law must *mandate* the agency action that the plaintiff seeks to compel—reflects the fact that, prior to the APA, courts compelled executive action via writs of mandamus, which were available only for "specific, unequivocal command[s]" as to which the agency had "no discretion whatever." *SUWA*, 542 U.S. at 63 (internal quotation marks and citations omitted). Thus, "the only agency action that can be compelled under the APA is action legally *required*." *Id.* (emphasis in original). Moreover, the mandatoriness requirement means that courts cannot compel agencies to take action *beyond* what is legally required of them. For example, "when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Id.* at 65. In other words, a court presented with a valid § 706(1) claim can order what the law

requires, but no more. *See, e.g., People for the Ethical Treatment of Animals v. USDA*, 797 F.3d 1087, 1098 (D.C. Cir. 2015) (holding that, even if the Animal Welfare Act required an agency to promulgate standards with respect to birds, the Act did not require that the agency apply its general enforcement standards to birds before the bird-specific standards were complete); *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 634 (D.C. Cir. 2014) (holding that, even if statute required the Internal Revenue Service to create an excise-tax refund procedure, it did not require the specific procedure that the plaintiffs sought to compel).

Notably, the "law" that generates a mandatory duty need not be a statute—it can also be an "agency regulation[] that ha[s] the force of law[.]" *SUWA*, 542 U.S. at 64; *accord SAI v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99, 119 (D.D.C. 2015). And while the mandatoriness requirement is textually grounded in § 706(1)'s explicit reference to "'agency action *unlawfully* withheld[,]'" *SUWA*, 542 U.S. at 63 (emphasis added by *SUWA*) (quoting 5 U.S.C. § 706(1)), the requirement applies regardless of whether a claim under § 706(1) seeks to compel agency action "unlawfully withheld" or agency action "unreasonably delayed" because "a delay cannot be unreasonable with respect to action that is not required." *Id.* at 63 n.1; *see also In re Am. Rivers*, 372 F.3d at 418.

In sum, a plaintiff who asks a court to "compel agency action . . . unreasonably delayed" under § 706(1) must pinpoint an agency's failure to take an action that is *both* discrete *and* mandatory. *See SUWA*, 542 U.S. at 64.

### B. Motions To Dismiss § 706(1) Claims Under Federal Rule Of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

If a complaint that contains a claim brought under § 706(1) fails to identify a discrete and mandatory agency duty, the court must grant the defendant's Rule 12(b)(6) motion and dismiss the claim. *See, e.g.*, *Anglers Conservation Network v. Pritzker*, 70 F. Supp. 3d 427, 439–41 (D.D.C. 2014), *aff'd*, 809 F.3d 664 (D.C. Cir. 2016); *see also Sierra Club v. Jackson*, 648 F.3d 848, 853–54 (D.C. Cir. 2011) (explaining that whether a plaintiff has adequately pleaded a predicate agency duty is properly analyzed under Rule 12(b)(6), not Rule 12(b)(1)). So it is here.

## III. ANALYSIS

### A. Section 1507.3(a) Does Not Mandate The Actions That CBD Seeks To Compel

In its complaint, CBD seeks an order requiring Interior to take two actions by dates certain: "complete its review of its NEPA procedures within ninety (90) days and issue the necessary revisions within one hundred twenty (120) days." (Compl., Prayer for Relief ¶ 4.)[5] In response to questioning during the Court's motion hearing, CBD's counsel went further, adding that Interior is also obligated to publish its final decision

---

[5] The complaint also asks the Court to "[o]rder Interior to act on [CBD]'s petition within thirty (30) days" (Compl., Prayer for Relief ¶ 3), but as CBD acknowledges, that request for relief became moot when Interior denied CBD's rulemaking petition during the course of this lawsuit (*see* Opp'n at 14).

in the Federal Register, regardless of whether it chooses to revise its current procedures or leave them intact. (*See* Tr. of Oral Arg. ("[I]t's our interpretation that that final decision as to whether revisions are needed has to be in the Federal Register[.]").) CBD maintains that these actions are mandatory for the purpose of § 706(1) because they are legally required under 40 C.F.R. § 1507.3(a). (*See* Opp'n at 15 ("Interior is legally required to complete its pending review of its categorical exclusions for offshore oil and gas drilling activities."); *id.* at 16 ("That review must culminate in a decision to revise its procedures or that its procedures are adequate and do not need revision.").) However, for the reasons explained below, this Court has concluded that Interior is not legally bound to take any of these actions, and therefore, this lawsuit fails to identify a mandatory duty that the Court can enforce under § 706(1).

      1.    <u>Section 1507.3(a) Does Not Require Agencies To Complete Their</u> <u>Review Of Their NEPA Procedures</u>

The key CEQ regulation at issue in this case—40 C.F.R. § 1507.3(a)—imposes an initial obligation on each federal agency to "adopt procedures" for implementing NEPA. Before adopting its procedures, each agency must consult with other agencies that have similar NEPA programs and with CEQ, and must publish its proposed procedures in the Federal Register for public comment. 40 C.F.R. § 1507.3(a). And once adopted, an agency's NEPA procedures must be "filed with [CEQ] and made readily available to the public." *Id.*; *see also Mich. Gambling Opposition*, 525 F.3d at 28 (explaining that Interior "complied with these requirements when it established its NEPA procedures, now codified in its manual"). What is at issue here is the regulation's closing sentence, which describes the extent of each agency's continuing obligations with respect to its NEPA procedures after those procedures are in place:

"Agencies shall continue to review their policies and procedures and in consultation with [CEQ] to revise them as necessary to ensure full compliance with the purposes and provisions of [NEPA]." 40 C.F.R. § 1507.3(a).

Nowhere does section 1507.3(a) require that an agency's review of its NEPA procedures must come to a finite conclusion that entails a decision regarding whether or not revisions are necessary. To the contrary, the duty to "continue to review" NEPA procedures is, by definition, *continuous*. Furthermore, the final sentence of section 1507.3(a) stands in stark contrast with a previous sentence in the very same provision, which pertains to CEQ's duty to review each agency's initial NEPA procedures before they are adopted. In that sentence, section 1507.3(a) expressly commands that CEQ "shall *complete* its review within 30 days." *Id.* (emphasis added). It is well-settled that, when a legal text "includes particular language in one section . . . but omits it in another section[,]" courts may presume that the text's author "act[ed] intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks and citation omitted). Thus, the absence of similar language about "completing" review in the final sentence of section 1507.3(a)—the sentence at issue in this case—suggests that, in contrast with the pre-adoption review, the contemplated ongoing review need not come to a finite conclusion.

CBD presses two primary arguments for its contention that Interior has a duty to complete the review of its NEPA procedures by making a final decision regarding whether or not revisions are warranted, but neither succeeds. First, CBD argues that the first part of the final sentence of section 1507.3(a) uses the word "shall"—i.e.,

"[a]gencies *shall* continue to review their policies and procedures" (emphasis added)—
and thus reflects a mandatory duty. (*See* Opp'n at 15–16.) It is true enough that the
word "shall" typically conveys mandatoriness, *see, e.g.*, *Kingdomware Techs., Inc. v.
United States*, 136 S. Ct. 1969, 1976–77 (2016), but that uncontroversial proposition
says nothing about *which* actions, exactly, section 1507.3(a) mandates. The command
in the regulation is that agencies "shall continue to review" their NEPA procedures,
which does not plainly indicate that agencies must *complete* any such review (i.e., come
to a conclusion about the necessity of revisions), and in fact, suggests the opposite.

CBD's second argument is that, by publicly commencing a review of its NEPA
procedures, Interior effectively imposed upon itself a mandate to complete its review.
Relying principally on the D.C. Circuit's decision in *Cutler v. Hayes*, 818 F.2d 879
(D.C. Cir. 1987), CBD asserts that even if section 1507.3(a) itself does not require
completion expressly, the agency's own actions in undertaking the required review of
its NEPA procedures triggered a duty to complete the review within a reasonable time.
(*See* Opp'n at 16–18; *see also id.* at 16 ("Once an agency elects to respond to a
directive in a certain manner, 'the APA impose[s] an obligation to proceed with
reasonable dispatch.'" (quoting *Cutler*, 818 F.2d at 895)).) But in paraphrasing *Cutler*,
CBD has glossed over a pivotal distinction between that case and this one: *Cutler*
actually provides that "[o]nce [the agency] elected to respond to its *legislative* directive
[in a certain manner], the APA imposed an obligation to proceed with reasonable
dispatch." 818 F.2d at 895 (emphasis added). As *Cutler* and CBD's other authorities
make clear, absent a preexisting legislative (or otherwise legally binding) duty to
complete a task, an agency does not spawn such a duty simply by commencing the task.

*Cutler* involved a comprehensive review of the safety and efficacy of all over-the-counter ("OTC") drugs then on the market that the Food & Drug Administration had undertaken in order to comply with certain amendments to the agency's governing statute. *Id.* at 883–84. The D.C. Circuit held that a claim for "unreasonable delay" in the agency's completion of that review could proceed, but not because of any freestanding duty for an agency to finish what it has started, as CBD would have it. Rather, the court specifically rested its holding on the fact that the OTC drug review was the agency's chosen method of *complying with a new statutory mandate*:

> [T]he 1962 amendments to the [statute] obligate FDA to review all nonexempt OTC drugs for their therapeutic efficacy as well as their safety. . . . Although FDA's discretion extends to [the method of its review,] . . . the agency lacks authority to simply do nothing to effectuate the purpose of the Act.

*Id.* at 895. Indeed, the court expressly suggested that an "unreasonable delay" claim might *not* have been available if "the OTC drug review [w]as a 'voluntary' program" as opposed to a statutorily required one. *Id.* Thus, *Cutler* does not support—and in fact directly undercuts—CBD's argument that an agency can convert a voluntary task into a mandatory one simply by embarking on it. [6]

CBD's reliance on *Piedmont Environmental Council v. FERC*, 558 F.3d 304 (4th Cir. 2009) as its sole authority for the proposition that the review process contemplated by section 1507.3(a) must culminate in a final decision as to whether revisions are

---

[6] All of the other cases that CBD cites in support of this argument are similarly distinguishable on the grounds that they involved an agency's delayed completion of a task that the agency was under an independent duty to perform. *See Biodiversity Legal Found. v. Norton*, 285 F. Supp. 2d 1, 13 (D.D.C. 2003) ("For an APA 'unreasonable delay' claim to survive, the agency must have a statutory duty in the first place." (internal quotation marks and citation omitted)); *Pub. Citizen Health Research Grp. v. FDA*, 724 F. Supp. 1013, 1018–19 (D.D.C. 1989) (addressing an agency's delay in issuing a final rule in response to a petition for rulemaking, a task that the APA itself requires agencies to "conclude . . . within a reasonable time," 5 U.S.C. § 555(b)); *see also Sierra Club v. Thomas*, 828 F.2d 783, 792 n.66, 796–97 (D.C. Cir. 1987) (same).

warranted (*see* Opp'n at 16) is misplaced. *Piedmont* involved a claim that an agency "violated [section 1507.3(a)] when it revised its own NEPA-implementing regulations without first consulting with the CEQ." 558 F.3d at 317–18. Because the agency had failed to conduct the required consultation, the court vacated the offending amendments. *See id.* at 318–19. Far from "recognizing that the review process required by the last sentence [of section 1507.3(a)] results in [a] decision to amend or not to amend procedures[,]" as CBD suggests (Opp'n at 16), *Piedmont* simply speculated about what the agency might do after consulting with the CEQ. *See* 558 F.3d at 319. The *Piedmont* court had no occasion to discuss the question of whether an agency reviewing its NEPA procedures in the first instance must come to a finite decision regarding whether to issue revisions at all, and consequently said nothing on that subject. *See id.*

The bottom line is this: CBD has identified no authority suggesting that agencies have either a general, freestanding obligation to finish any and all tasks that they undertake, or a specific obligation to complete a review of their NEPA procedures and decide if revisions are warranted, and this Court is not aware of any. In fact, insofar as CBD's complaint acknowledges that Interior is currently undertaking an ongoing review of its NEPA procedures (*see* Compl. ¶ 66), the complaint not only fails to show that Interior has breached a required duty to complete its review by making a final decision about the necessity of revisions, but also effectively concedes that Interior *is* fulfilling the duty that the regulation actually imposes—to "continue to review." *See* 40 C.F.R. § 1507.3(a). Consequently, CBD's complaint, to the extent that it seeks a court order compelling Interior to complete its review within 90 days, does not state a claim upon

which relief can be granted. *See SUWA*, 542 U.S. at 63–64 (noting that courts cannot order actions pursuant to § 706(1) that are not otherwise compelled by law).

2. <u>Section 1507.3(a) Does Not Require Agencies To Publicize Their Decision Regarding Whether Or Not To Revise Their NEPA Procedures</u>

Furthermore, as this Court reads 40 C.F.R. § 1507.3(a), even when an agency completes a review of its NEPA procedures, that agency is under no obligation to *announce* its decision regarding whether to revise them. CBD appears to assume that section 1507.3(a) mandates publication of the results of the required review. (*See* Tr. of Oral Arg. ("[I]t's our interpretation that that final decision as to whether revisions are needed has to be in the Federal Register[.]").) But the text of the regulation does not mention any such duty to publish; by its terms, the regulation only requires that, when an agency *initially* develops its NEPA procedures, the agency must "publish[] them in the Federal Register for comment." 40 C.F.R. § 1507.3(a).

Indeed, the regulation is entirely devoid of any requirements that mandate outward-facing steps by an agency in connection with its *review* of its NEPA procedures, in contrast with other provisions of law that bear the hallmarks of an enforceable publication requirement. *Compare id.* ("Agencies shall continue to review their policies and procedures and in consultation with [CEQ] to revise them as necessary to ensure full compliance with the purposes and provisions of [NEPA]."), *with* 42 U.S.C. § 6921(b)(3)(C) ("Not later than six months after the date of submission of the applicable study . . . , the Administrator shall . . . either determine to promulgate regulations . . . or determine that such regulations are unwarranted. The Administrator shall publish his determination . . . in the Federal Register[.]"), *and* 16 U.S.C. § 1533(a)(3)(B) ("Within 12 months after receiving a petition [to list or de-list an

endangered or threatened species that] present[s] substantial information indicating that the petitioned action may be warranted, the Secretary shall make one of the following [three] findings" and must "publish such finding in the Federal Register."). Given the absence of language that plainly obliges the agency to make and announce its decision with respect to the continuous NEPA review, language that exists in other contexts, CBD is hard-pressed to find any publication duty in section 1507.3(a).

To be sure, if an agency reviews its NEPA procedures pursuant to section 1507.3(a) and decides to revise them, the APA's general notice-and-comment requirements might apply of their own force to obligate the agency to engage the public in the revision process. *See* 5 U.S.C. § 553 (setting forth rulemaking procedures). But any such requirement derives from the APA, not section 1507.3(a). And what is at issue here is whether the CEQ regulation itself requires the agency to publish its revision decision, independent of this other obligation. Put another way, the question that CBD's argument poses is whether, when an agency reviews its NEPA procedures and concludes that revisions are *not* necessary, section 1507.3(a) requires the agency to announce that decision, such that its failure to do so gives rise to a claim under 5 U.S.C. § 706(1).

CBD has not pointed to anything in the text of 40 C.F.R. § 1507.3(a), the cases interpreting it, or the record that even remotely suggests that an agency is legally required to report out any findings and conclusions arising from the agency's continuous review of its NEPA policies.[7] And in this Court's view, it is not even clear

---

[7] Interior's letter denying CBD's petition for rulemaking, which assures CBD that Interior will complete its review of its NEPA procedures and publish any revisions in the Federal Register (*see* Denial of Pet. for Rulemaking at 4, 6–7), does not "have the force of law[,]" and thus cannot generate a mandatory legal duty subject to judicial enforcement. *See SUWA*, 542 U.S. at 65.

how the publication requirement that CBD posits would work in the context of an ongoing review. Presumably, an agency that is faithfully fulfilling its duty to review its NEPA procedures on a continuous basis pursuant to section 1507.3(a) would make periodic submissions to the Federal Register announcing that no revisions are necessary at that time. But the circumstances under which such an announcement would be legally required—e.g., at what point during the review cycle, exactly, must the agency foreswear revisions?—are not defined (which, of course, supports the contention that no such publication mandate actually exists).

This all means that CBD's request for an order that requires Interior to "complete its review of its NEPA procedures" (Compl., Prayer for Relief ¶ 4)—i.e., to decide either "to revise its [mineral lease approval] procedures or that its procedures are adequate and do not need revision" (Opp'n at 16)—and notify the public of Interior's decision in this regard (*see* Tr. of Oral Arg.) seeks more than what section 1507.3(a) requires. As a result, this Court cannot order Interior to disclose the results of its ongoing review under 5 U.S.C. § 706(1). *See SUWA*, 542 U.S. at 63–65.

3. Section 1507.3(a) Only Requires An Agency To Make Revisions If The Agency Deems Them Necessary, And That Is Insufficient To Establish A Mandatory Duty For The Purpose Of § 706(1)

The primary textual basis for the position that CDB has taken regarding the mandatoriness requirement is the regulatory language that appears to *demand* implementation of changes to an agency's NEPA procedures "as necessary[.]" 40 C.F.R. § 1507.3(a) ("Agencies *shall* continue to review their policies . . . and . . . to revise them as necessary[.]" (emphasis added)). CBD reads this language to establish a legal duty to revise that can be enforced under 5 U.S.C. § 706(1) where, as here, no such changes are forthcoming. (*See* Opp'n at 15–18.) This contention has superficial

appeal, but it ultimately fails because it is well established that the formulation that an agency "shall" take certain action "*as necessary*" lacks the degree of mandatoriness needed to give rise to a claim under 5 U.S.C. § 706(1).

In *Sierra Club v. Jackson*, for example, the D.C. Circuit affirmed the dismissal of a claim brought under the Clean Air Act's citizen-suit provision, which, like § 706(1), requires that the plaintiff identify an agency's failure to perform a "nondiscretionary duty[.]" 648 F.3d at 852 (citing 42 U.S.C. § 7604(a)(2)). At issue in *Sierra Club* was a statutory requirement that the Environmental Protection Agency "'shall . . . take such measures, including issuance of an order, or seeking injunctive relief, as necessary to prevent the construction or modification of a major emitting facility . . . proposed to be constructed' in an attainment area." *Id.* (second alteration in original) (quoting 42 U.S.C. § 7477).[8] The *Sierra Club* court concluded that the "shall [take action] as necessary" formulation left too much discretion to the agency to allow for judicial enforcement, because "[t]here is no guidance to [the EPA] or to a reviewing court as to what action is 'necessary.'" *Sierra Club*, 648 F.3d at 856; *see also id.* ("Granted, the statute further says, 'as necessary to prevent the construction or modification of a major emitting facility . . . proposed to be constructed' in an

_____

[8] The provision discussed in *Sierra Club* pertains to the Clean Air Act's "Prevention of Significant Deterioration of Air Quality" program for regions that have attained benchmark air quality standards, and reads in full:

> The Administrator shall, and a State may, take such measures, including issuance of an order, or seeking injunctive relief, as necessary to prevent the construction or modification of a major emitting facility which does not conform to the requirements of this part, or which is proposed to be constructed in any area designated pursuant to section 7407(d) of this title as attainment or unclassifiable and which is not subject to an implementation plan which meets the requirements of this part.

42 U.S.C. § 7477.

attainment area, but that nonetheless leaves it to the Administrator's discretion to determine what action is 'necessary.'" (alteration in original)).

Just like the "shall [take action] as necessary" formulation in the statute at issue in *Sierra Club*, section 1507.3(a)'s requirement that agencies "shall continue . . . to revise [their NEPA procedures] as necessary" confers upon agencies so much discretion regarding whether and how to act that it lacks the mandatoriness that is required to support a cause of action under § 706(1). *See id.* at 856–57. *But see Appalachian Voices v. McCarthy*, 989 F. Supp. 2d 30, 54 (D.D.C. 2013).[9]

## B. Section 1507.3(a) Does Not Prescribe A Discrete Duty

As explained above, § 706(1) only authorizes courts to compel "circumscribed, discrete agency actions[.]" *SUWA*, 542 U.S. at 62; *see also* 5 U.S.C. § 706(1) (directing courts to "compel *agency action* unlawfully withheld or unreasonably delayed" (emphasis added)); *id.* § 551(13) (defining "agency action"). But it is clear to this Court that the regulatory language that CBD seeks to enforce in this lawsuit—which, again, provides that "[a]gencies shall continue to review their policies and procedures and in consultation with the [CEQ] to revise them as necessary to ensure full compliance with the purposes and provisions of [NEPA,]" 40 C.F.R. § 1507.3(a)— prescribes only an agency's general mode of operations, not any discrete agency action, and thus cannot be the basis for a valid § 706(1) claim.

---

[9] Without citing or distinguishing *Sierra Club*, the court in *Appalachian Voices* held that a statute requiring that "'[e]ach regulation promulgated under this Act shall be reviewed and, where necessary, revised not less frequently than every three years'" imposes an enforceable, non-discretionary duty to determine whether revisions are necessary. 989 F. Supp. 2d at 54 (alteration in original) (emphasis omitted) (quoting 42 U.S.C. § 6912(b)).

First of all, the duties to "continue to review" agency procedures and to "continue . . . to revise them as necessary" are clearly ongoing and have no fixed end point, as explained above. *Id*. They are also inherently "broad" and "programmatic"— exactly the sort of duties that *SUWA* cautioned courts against enforcing. 542 U.S. at 64; *see also id*. at 66 ("The principal purpose of the APA limitations we have discussed . . . is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve."). In fact, when properly understood, the final sentence of section 1507.3(a) actually reflects nothing more than a subset of the omnipresent duty to ensure that agency procedures accord with all applicable statutes, which every agency has under all circumstances, and as such, it is far too general and amorphous to be the kind of agency action that can be enforced by a claim brought under § 706(1) of the APA. *See El Paso Nat. Gas Co.*, 750 F.3d at 891 (holding that a provision that "contains only a general follow-the-law directive . . . flunks *SUWA*'s discreteness test").

Notably, the fact that an agency can fully comply with section 1507.3(a) without undertaking any judicially reviewable final action underscores the inappropriateness of the § 706(1) claim that CBD presses here. That is, by its terms, section 1507.3(a) plainly permits an agency to examine its NEPA procedures periodically, conclude that revisions are unnecessary, and take no further action. (*See supra* § III.A.3.) And that means that neither the agency's ongoing deliberations about whether or not to revise agency procedures nor its decision to leave current procedures

intact for the time being qualifies as a discrete agency action that would give rise to a legal challenge under § 706(1) *or* § 706(2) of the APA.

The import of this point comes into focus when one contrasts the delay in this case with the delays at issue in the cases CBD cites in support of its discreteness argument. (*See* Opp'n at 20 (citing *Solenex LLC v. Jewell*, 156 F. Supp. 3d 83 (D.D.C. 2015); *Oceana*, 37 F. Supp. 3d 147; *Hamandi v. Chertoff*, 550 F. Supp. 2d 46 (D.D.C. 2008)).) In *Solenex*, the court reviewed the Bureau of Land Management's delay in deciding whether to reinstate a suspended natural gas exploration lease issued under the Mineral Leasing Act. 156 F. Supp. 3d at 84. The upshot of the delay was that it amounted to an effective denial of a final adjudication of the lessee's lease rights which, if the adjudication had occurred, would certainly have constituted reviewable final action. So, too, were the circumstances in *Oceana*, which involved an agency's failure to complete a biological opinion under Section 7 of the Endangered Species Act, *see* 37 F. Supp. 3d at 182–87, and in *Hamandi*, which involved U.S. Customs and Immigration Services' delay in ruling on an application for naturalization, 550 F. Supp. 2d at 49–51. By contrast, CBD has not asserted that Interior's protracted review of its own NEPA procedures has forestalled another discrete, reviewable agency determination that the agency would otherwise be required to make.

The absence of any well-defined requirements in section § 1507.3(a) for a specific course of action, such as a mandate that each agency complete its review before a set deadline and publish the results, also supports the Court's conclusion that this regulation fails to prescribe a discrete duty. *See, e.g.*, *SUWA*, 542 at 63 (describing a "failure to . . . take some decision by a statutory deadline" as an archetypal discrete

failure to act); *Xie v. Kerry*, 780 F.3d 405, 408 (D.C. Cir. 2015) (holding that a provision set forth a discrete, enforceable duty where it "establish[ed] a specific principle of temporal priority" and various "cut-off dates"). The absence of a publication requirement in particular suggests that section 1507.3(a) does not demand "agency action" in the relevant sense, because "agency action" for the purpose of an enforcement claim brought under § 706(1) must be "equivalent" to one of the examples enumerated in the APA's definition of "agency action," 5 U.S.C. § 551(13); *see SUWA*, 542 U.S. at 62 (explaining the equivalence rule), and the only enumerated species of agency action in the statute that even vaguely resembles an agency's decision whether to revise its NEPA procedures pursuant to 40 C.F.R. § 1507.3(a) is "an agency *statement* of general or particular applicability and future effect[,]" 5 U.S.C. § 551(4) (emphasis added) (defining a "rule"); *see also id.* § 553(b), (d) (clarifying that a rule must be published in the Federal Register).

In this Court's view, the lack of discreteness is also inherent in what CBD is asking for on a conceptual level: boiled to bare essence, it appears that what CBD's complaint is really seeking in this case is judicial oversight of Interior's internal deliberations regarding whether and when to change its current NEPA procedures. (*See* Compl. ¶ 17 (describing environmental risks that are resulting from "Interior's failure to . . . complete its review of NEPA procedures to ensure comprehensive environmental review of each stage of offshore oil and gas activities"); Opp'n at 17–18 (observing that, without judicial review, "Interior would *never* have to decide whether to revise its categorical exclusions for offshore oil and gas drilling, even after both CEQ and the Deepwater Horizon Commission recommended that Interior substantially revise its

NEPA procedures to ensure adequate protections for the public and the environment, and Interior decided that such review was necessary" (emphasis in original)).)

But courts do not, and cannot, police agency deliberations as a general matter; indeed, it is only when the agency actually takes some final action that review under the APA is appropriate. *See U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (explaining that, to be reviewable "final agency action" under 5 U.S.C. § 704, an action "'must mark the consummation of the agency's decisionmaking process'" and "'must be one by which rights or obligations have been determined, or from which legal consequences will flow'" (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997))). This well-established rule "protect[s] the integrity of the administrative process" by "prevent[ing] premature judicial intervention," *Pub. Citizen Health Research Grp. v. Comm'r, FDA*, 740 F.2d 21, 30 (D.C. Cir. 1984), and courts only step out of that limited role when non-final agency action has been "made reviewable by statute[,]" 5 U.S.C. § 704, or when an agency fails to perform a discrete, ministerial task that the law unambiguously requires and thus can be enforced without undue judicial interference, 5 U.S.C. § 706(1); *see also Pub. Citizen Health Research Grp.*, 740 F.2d at 30–32 (describing review under § 706(1) as an exception to the "final agency action" requirement). In other words, meddling in an agency's tentative, internal deliberations absent a clear-cut legal mandate to do so risks upsetting the balance between the judicial and administrative functions that Congress struck in the APA, *see SUWA*, 542 U.S. at 66–67, and in this Court's considered judgment, that is precisely what CBD is asking the Court to do here.

## IV. CONCLUSION

Rather than await final agency action in the form of either a revision to Interior's NEPA procedures or the application of the current procedures to a project undergoing NEPA review, CBD has challenged Interior's delay in reviewing and revising its NEPA procedures, attempting to use 40 C.F.R. § 1507.3(a) as a foothold. But the duties prescribed by that regulation—that each agency "continue to review" its NEPA procedures and "continue . . . to revise them as necessary"—reflect ongoing, internal agency deliberations, not the sort of discrete agency action that can support judicial enforcement under 5 U.S.C. § 706(1). Furthermore, the particular agency actions that CBD seeks to compel pursuant to this Court's authority under the APA—completion of Interior's NEPA review; announcement of the agency's decision regarding whether or not its NEPA procedures will be revised; and the publication of any proposed revisions—are not mandated by the CEQ regulation to which CBD points.

It is clear beyond cavil that a court may only "compel agency action unlawfully withheld or unreasonable delayed" under 5 U.S.C. § 706(1) when "an agency failed to take a *discrete* agency action that it is *required to take*," *SUWA*, 542 U.S. at 64 (emphasis in original), and for the reasons explained fully above, CBD's complaint fails both the mandatoriness and discreteness requirements. This means that CBD has not stated a claim upon which relief can be granted, and therefore, in accordance with this Court's Order of March 31, 2017, Interior's motion to dismiss has been **GRANTED**, and CBD's complaint has been **DISMISSED**.

DATE: May 4, 2017

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge